| | | |
|---|---|---|
| IN RE:<br><br>KEURIG GREEN MOUNTAIN SINGLE SERVE COFFEE ANTITRUST LITIGATION | : : : : : : : : | ECF Case<br><br>MDL No. 2542<br><br>Master Docket No. 1:14-md-2542-VSB-SLC |
| JBR, Inc. (D/B/A ROGERS FAMILY COMPANY),<br><br>    Plaintiff/<br>    Counterclaim Defendant,<br><br>    v.<br><br>KEURIG GREEN MOUNTAIN, INC. (F/K/A GREEN MOUNTAIN COFFEE ROASTERS, INC. AND AS SUCCESSOR TO KEURIG, INC.),<br><br>    Defendant/<br>    Counterclaim Plaintiff. | : : : : : : : : : : : : : : : : : | 1:14-cv-04242-VSB-SLC |

**JBR'S REPLY IN SUPPORT OF MOTION THAT THE COURT SUGGEST TO THE MDL PANEL THAT JBR'S CLAIMS AGAINST KEURIG BE REMANDED TO THE EASTERN DISTRICT OF CALIFORNIA**

1

TABLE OF CONTENTS

Page

I. INTRODUCTION ........................................................................................................ 1

II. ARGUMENT ............................................................................................................. 1

    A. Transferee Courts Routinely Exercise Discretion to Order Transfer Prior to Motions for Summary Judgment. ............................................................................. 1

    B. JBR's Case Will Go to Trial in California Because There is No Possibility of All Causes of Action In This Case being Fully Resolved on Summary Judgment. .......... 3

    C. The Judge in E.D. Cal. Should Decide The Remaining Issues ......................................... 6

    D. Keurig's Speculation Is Not a Ground to Prevent Remand ............................................. 7

    E. Keurig's Own Cited Evidence Shows the Stakes are High in This Matter. ................. 9

    F. JBR Has Aggressively Sought to Mitigate the Harm Caused by Delay. ...................... 9

III. CONCLUSION ........................................................................................................ 10

TABLE OF AUTHORITIES

Page

**Cases**

*Am. Ad Mgmt., Inc. v. GTE Corp.*,
   92 F.3d 781 (9th Cir. 1996) .................................................................................... 6

*Apotex, Inc. v. Cephalon, Inc.*,
   No. 2:06-CV-2768, 2014 WL 5354243 (E.D. Pa. Aug. 19, 2014) ............................ 3

*Complete Ent. Res. LLC v. Live Nation Ent., Inc.*,
   No. CV 15-9814 DSF (AGRx), 2017 WL 6512223 (C.D. Cal. Oct. 16, 2017) ........ 6

*F.T.C. v. H.J. Heinz*,
   116 F. Supp. 2d 190 (D.D.C. 2000) ......................................................................... 4

*F.T.C. v. H.J. Heinz*,
   246 F.3d 708 (D.C. Circuit 2001) ............................................................................ 4

*F.T.C. v. Swedish Match*,
   131 F.Supp.2d 151 (D.D.C. 2000) ........................................................................... 4

*High Technology Careers v. San Jose Mercury News*,
   996 F.2d 987 (9th Cir.1993) .................................................................................... 3

*In re Activated Carbon-Based Hunting Clothing Mktg. & Sales Practices Litig.*,
   840 F. Supp. 2d 1193 (D. Minn. 2012) ........................................................ 1, 2, 7, 8

*In re Baseball Bat Antitrust Litig.*,
   112 F. Supp. 2d 1175 (J.P.M.L. 2000) ................................................................. 2, 6

*In re Brand–Name Prescription Drugs Antitrust Litig.*,
   264 F.Supp.2d 1372 (J.P.M.L. 2003) ................................................................... 3, 7

*In re Cessna 208 Series Aircraft Prods. Liab. Litig.*,
   MDL No. 1721, 2009 WL 1357234 (D. Kan. May 12, 2009) .................................. 7

*In re Evergreen Valley Project Litig.*,
   435 F.Supp. 923 (J.P.M.L.1977) .............................................................................. 2

*In re Ford Motor Co. Bronco II Prod. Liab. Litig.*,
   MDL No. 991, 1998 WL 308013 (E.D. La. June 8, 1998) ...................................... 2

*In re Insurance Brokerage Antitrust Litigation*,
   MDL No. 1663, 2009 WL 1874085 (D.N.J. June 30, 2009) .................................... 8

*In re Light Cigarettes Mktg. Sales Practices Litig.*,
   832 F. Supp. 2d 74 (D. Me. 2011) ........................................................................... 9

*In re Orthopedic Bone Screw Products Liab. Litig.*,
  1997 WL 109595 (E.D. Penn. 1997) ............................................................................... 7

*In re State St. Bank & Tr. Co. Fixed Income Funds Inv. Litig.*,
  No. 08 CIV. 5440 RJH, 2011 WL 1046162 (S.D.N.Y. Mar. 22, 2011) ................................ 2, 7

*In re Takata Airbag Prod. Liab. Litig.*,
  No. 14-24009-CV, 2020 WL 1057280 (S.D. Fla. Mar. 3, 2020) ........................................ 7, 8

*Jensen Enterprises Inc. v. AT & T Inc.*,
  No. C06-247 SI, 2007 WL 2009797 (N.D. Cal. July 6, 2007) ........................................... 3

*Lexecon, Inc. v. Milberg Weiss Bershad Hynes Lerach, et al.*,
  523 U.S. 26, 118 S.Ct. 956, 140 L.Ed.2d 62 (1998) ........................................................ 6

*Meredith Corp. v. SESAC LLC*,
  1 F. Supp. 3d 180 (S.D.N.Y. 2014) ................................................................................. 6

*Olin Corp. v. F.T.C.*,
  986 F.2d 1295 (9th Cir. 1993) ....................................................................................... 5

*Roxul USA, Inc. v. Armstrong World Indus., Inc.*,
  No. 17-1258, 2019 WL 1109868 (D. Del. Mar. 8, 2019) .................................................. 6

*Stop & Shop Supermarket Co. v. Blue Cross & Blue Shield of R.I.*,
  373 F.3d 57 (1st Cir. 2004) ........................................................................................... 6

*Stop & Shop Supermarket Co. v. Blue Cross & Blue Shield of Rhode Island*,
  239 F. Supp. 2d 180 (D.R.I. 2003) ................................................................................. 6

*Tennessee Med. Ass'n v. United Healthgroup Inc.*,
  Case No. 00-1334-MD, 2014 WL 12837582 (S.D. Fla. Jan. 16, 2014) ............................ 7

*Times–Picayune Pub. Co. v. United States*,
  345 U.S. 594, 73 S.Ct. 872, 97 L.Ed. 1277 (1953) .......................................................... 4

*U.S. Anchor Mfg., Inc. v. Rule Indus., Inc.*,
  7 F.3d 986 (11th Cir. 1993) ........................................................................................... 5

*United States v. Archer–Daniels–Midland Co.*,
  866 F.2d 242 (8th Cir.1988) .......................................................................................... 4

*United States v. Microsoft Corp.*,
  253 F.3d 34 (D.C. Cir. 2001) ......................................................................................... 5

**Other Authorities**

Manual for Complex Litigation § 20.133 .............................................................................. 2

## I. INTRODUCTION

Keurig's opposition offers no compelling basis to deny JBR's motion to suggest remand. Contrary to Keurig's wishful thinking, this is not a case resolvable on summary judgment. Due to the extensive factual disputes, Keurig's summary judgment motions have no chance of success, and summary judgment is therefore no reason to delay remand.

JBR's case is inexorably marching toward trial. This MDL only involves four plaintiffs, unlike a typical MDL that may involve dozens if not hundreds. This MDL has been fully coordinated for discovery purposes, but further coordination does not benefit the parties. Most or all of JBR's claims in the case will head to trial in California resulting in a different judge trying JBR's claims while this Court holds separate trials for the Treehouse, McLane, and DPPs' cases against Keurig. Keurig's speculation about inconsistent judgments should be rejected because this court and the trial judge in California are fully capable of managing their dockets to take into account prior rulings on like issues. The case should head to the trial judge in California now so that she can efficiently use the benefits of the massive discovery record in this case to begin to manage the case for trial, including ruling on Daubert issues, motions in limine, and other evidentiary issues.

## II. ARGUMENT

### A. Transferee Courts Routinely Exercise Discretion to Order Transfer Prior to Motions for Summary Judgment.

Contrary to Keurig's opposition, courts "routinely suggest remand despite pending dispositive motions." *See, e.g., In re Activated Carbon-Based Hunting Clothing Mktg. & Sales Practices Litig.*, 840 F. Supp. 2d 1193, 1200 (D. Minn. 2012); *In re State St. Bank & Tr. Co. Fixed Income Funds Inv. Litig.*, No. 08 CIV. 5440 RJH, 2011 WL 1046162, at *4-6 (S.D.N.Y. Mar. 22,

2011); *In re Baseball Bat Antitrust Litig.*, 112 F. Supp. 2d 1175, 1177 (J.P.M.L. 2000); *In re Evergreen Valley Project Litig.,* 435 F.Supp. 923, 924 (J.P.M.L.1977) (per curiam).  Remand is particularly appropriate when only a few plaintiffs' cases remain.  *In re Ford Motor Co. Bronco II Prod. Liab. Litig.*, MDL No. 991, 1998 WL 308013, at *2 n. 11 (E.D. La. June 8, 1998) (suggesting remand where discovery was complete and a "handful of named plaintiffs" remained).

Keurig's argument that remand should not occur until after summary judgment motions are decided was rejected in *In re State St.*, 2011 WL 1046162, at *8.  In that case, the court noted that multi-district cases have been remanded at many different stages of litigation, ***including before*** and after ***summary judgment*** motions.  See Manual for Complex Litigation § 20.133, at 225.  Because it is the trial court's discretion as to whether to remand before summary judgment, the court rejected defendant State Street's citations to past cases that refused remand prior to summary judgment by noting that State Street's "argument conflates 'can' with 'should.'" *In re State St.*, 2011 WL 1046162, at *8.  The Court exercised its discretion to suggest remand of two separate consolidated cases back to the transferor court prior to ruling on defendants' summary judgment motions.  *Id*.

Just like the defendant in *State Street*, Keurig's argument cites various prior cases to leave the misimpression that the Court cannot suggest remand at this stage.  For the same reason this Court should reject this argument.  "It is not contemplated that a Section 1407 transferee judge will necessarily complete all pretrial proceedings in all actions transferred and assigned to him by the Panel."  *In re State St*., 2011 WL 1046162, at *4; *In re Activated Carbon-Based Hunting Clothing*, 840 F. Supp. 2d at 1199 ("the statute authorizing consolidation before a single judge makes clear that a transferred action may be remanded at ***or before*** the conclusion of coordinated pretrial proceedings"); *In re Evergreen Valley*, 435 F.Supp. at 924; *In re Brand–Name Prescription*

*Drugs Antitrust Litig.*, 264 F.Supp.2d 1372, 1375 (J.P.M.L. 2003) ("The plain language of section 1407 accords the Panel discretion to remand cases before the conclusion of pretrial proceedings.")

**B.     JBR's Case Will Go to Trial in California Because There is No Possibility of All Causes of Action In This Case being Fully Resolved on Summary Judgment.**

Keurig's opposition heavily relies on the severely mistaken premise that the Court can easily resolve this matter involving 17 causes of action on summary judgment. Despite **_seven years of litigation_**, Keurig has never precisely identified either to the Court or the parties any issues that are ripe or winnable on summary judgment. If Keurig truly had a basis to resolve the entire case with a silver bullet summary judgment motion, it would have previewed that issue for the Court in its motion papers years ago. It did not. Keurig has no hope of winning this case on summary judgment, and never did. Unsurprisingly, Keurig has consistently advocated for a schedule that put off summary judgment briefing for as long as possible, not the position a party would take if it had winnable summary judgment motions.

The two issues Keurig has affirmatively indicated it intends to move for summary judgment — market definition and harm to competition — have numerous factual disputes precluding findings in Keurig's favor. ECF No. 1303 at 6. There is a vast body of law denying summary judgment on the issue of market definition. *See, e.g.*, *High Technology Careers v. San Jose Mercury News*, 996 F.2d 987, 990 (9th Cir.1993); *Apotex, Inc. v. Cephalon, Inc.*, No. 2:06-CV-2768, 2014 WL 5354243, at *2 (E.D. Pa. Aug. 19, 2014); *Jensen Enterprises Inc. v. AT & T Inc.*, No. C06-247 SI, 2007 WL 2009797, at *4–5 (N.D. Cal. July 6, 2007).

In an attempt to avoid antitrust liability because it controls more than 90% of the U.S. brewer and pod markets, Keurig predictably defines the market in a way that includes all coffee

products (Ex. A[1] [PX2923] at ¶¶ 19-20; Ex. B [PX3137] at ¶¶ 147-150, 156) and all brewing systems instead of defining it as the industry does and ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇ Keurig's broad market approach has been consistently rejected in packaged food and beverage cases. *United States v. Archer–Daniels–Midland Co.*, 866 F.2d 242, 248 (8th Cir.1988) (functionally interchangeable sweeteners were separate product markets because "a small change in the price of [one] would have little or no effect on the demand for [the other]"); *F.T.C. v. Swedish Match*, 131 F.Supp.2d 151, 158 (D.D.C. 2000) (rejecting inclusion of loose leaf and moist snuff tobacco in same market where no evidence of cross-elasticity of demand); *F.T.C. v. H.J. Heinz*, 116 F. Supp. 2d 190, 195 (D.D.C. 2000) (undisputed that relevant market was jarred baby food, to the exclusion of homemade baby food), *affirmed*, 246 F.3d 708 (D.C. Circuit 2001).

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇ *Times–Picayune Pub. Co. v. United States*, 345 U.S. 594, 612, 73 S.Ct. 872, 97 L.Ed. 1277 (1953) (the relevant market "must be drawn narrowly to exclude any other product to which, within reasonable variations in price, only a limited number of buyers will turn; in technical terms,

---

[1] Exhibit citations are to the Reply Declaration of Mario Moore in Support of JBR's Motion that the Court Suggest to the MDL Panel that JBR's Claims Against Keurig Be Remanded to the Eastern District of California.

products whose 'cross-elasticities of demand' are small."); *Olin Corp. v. F.T.C.*, 986 F.2d 1295, 1298 (9th Cir. 1993); Ex. G [Wood 4/1/21 Dep.] at 19:22-20:7, 21:23-22:4; 46:1-19, 47:1-20, 51:13-19; 91:10-24, 92:6-9, 116:17-21; Ex. I [Murphy Dep.] at 27:14-28:20, 162:12-14, 168:7-18, 177:18-178:11, 271:10-23, 275:3-13. In the absence of any compelling evidence from its experts and considering the substantial evidence that packaged whole bean and ground coffee do not significantly affect pricing or demand for single serve portion packs and vice versa, there is no chance of Keurig's motion succeeding. *U.S. Anchor Mfg., Inc. v. Rule Indus., Inc.*, 7 F.3d 986, 996 (11th Cir. 1993); *United States v. Microsoft Corp.*, 253 F.3d 34, 53–54 (D.C. Cir. 2001).

Similarly absurd is Keurig's planned argument that there are no fact disputes on "whether Keurig's conduct related to its 2.0 brewer, advertising statements, agreements with distributors, and prior lawsuits, among other challenged actions, harmed competition." ECF No. 1303 at 7. There is a vast record of depositions of dozens of witnesses and piles of documents demonstrating harm to competition as to each of those categories of conduct. ▮▮▮▮▮▮▮▮▮▮▮▮ Major coffee brands were also coerced by Keurig's conduct to partner with Keurig.[3] This evidence is exhaustively discussed in the parties' 7000 pages of expert reports.

---

[2] Ex. J [Coffman/Stater Brothers 30(b)(6) Dep.] at 110:19-111:20, 112:9-113:17. Keurig's VP of Business Development and Strategic Partnerships Dan Cignarella was asked about the effect of telling retailers that "this taggant ink will only work in the Keurig 2.0 brewers . . . that the 1.0 machines would no longer be made . . . and . . . all outstanding machines . . . would . . . be converted to the new equipment within four or five years,"; he said "I think they would be motivated to partner with us." Ex. K [Cignarella 11/8/19 Dep.] at 505:8-20.

▮▮▮▮▮▮▮▮▮▮▮▮

5

A summary judgment motion on harm to competition will require weighing a mountain of evidence only to find that there are numerous disputed issues of fact favoring denial of summary judgment. *See*, *e.g.*, *Am. Ad Mgmt., Inc. v. GTE Corp.*, 92 F.3d 781, 791 (9th Cir. 1996); *Roxul USA, Inc. v. Armstrong World Indus., Inc.*, No. 17-1258, 2019 WL 1109868, at *18 (D. Del. Mar. 8, 2019); *Complete Ent. Res. LLC v. Live Nation Ent., Inc.*, No. CV 15-9814 DSF (AGRx), 2017 WL 6512223, at *3 (C.D. Cal. Oct. 16, 2017); *Meredith Corp. v. SESAC LLC*, 1 F. Supp. 3d 180, 196 (S.D.N.Y. 2014); *Stop & Shop Supermarket Co. v. Blue Cross & Blue Shield of Rhode Island*, 239 F. Supp. 2d 180, 193 (D.R.I. 2003), *aff'd sub nom. Stop & Shop Supermarket Co. v. Blue Cross & Blue Shield of R.I.*, 373 F.3d 57 (1st Cir. 2004).

**C. The Judge in E.D. Cal. Should Decide The Remaining Issues**

To the extent that Keurig is nonetheless inclined to burden the court by filing a voluminous series of futile summary judgment motions, it would be far more efficient for those motions to be heard by the judge who will try JBR's case in the Eastern District of California so that she can begin to familiarize herself with the evidence in this matter. *In re Baseball Bat Antitrust Litig.*, 112 F. Supp. 2d at 1177 ("remaining pretrial proceedings in *Baum* can best be managed in the Eastern District of Michigan before the transferor judge who, under the Supreme Court's ruling in *Lexecon, Inc. v. Milberg Weiss Bershad Hynes Lerach, et al.*, 523 U.S. 26, 118 S.Ct. 956, 140 L.Ed.2d 62 (1998), is the judge who must preside over any eventual *Baum* trial."). Doing so would allow the trial judge to get up to speed on the nature of the factual disputes, something she will have do anyway in the context of the inevitably lengthy *JBR v. Keurig* jury trial. The trial judge

will also be best positioned to address expert exclusion issues and other issues in motions *in limine*. *See In re State St.*, 2011 WL 1046162, at *9 ("the determinations about the exclusion of expert testimony, to the extent the need for them remains after the summary judgment motions, are best made after *in limine* motions are filed before the court that will actually oversee the trial of these cases in the Southern District of Texas."), citing *In re Orthopedic Bone Screw Products Liab. Litig.*, 1997 WL 109595, at *9 (E.D. Pa. 1997) ("[T]he 'finer' determinations concerning which of Dr. Alexander's opinions are subject to inclusion or exclusion are more appropriately made by the ultimate trial court after remand or transfer.") (internal quotation marks omitted); see *also In re Cessna 208 Series Aircraft Prods. Liab. Litig.*, MDL No. 1721, 2009 WL 1357234, at *2 (D. Kan. May 12, 2009). In short, the trial judge's consideration of summary judgment, Daubert, and other pretrial motions will lead to a more efficient trial and post-trial briefing.

**D. Keurig's Speculation Is Not a Ground to Prevent Remand.**

Commonality in some plaintiffs' causes of action is not a sufficient reason to keep JBR's action in this Court. *See In re Activated Carbon-Based Hunting*, 840 F. Supp. 2d at 1199, citing *In re Brand–Name Prescription Drugs*, 264 F.Supp.2d at 1375–76 (remanding 17 actions that all alleged violation of Robinson–Patman Act); *In re Takata Airbag Prod. Liab. Litig.*, No. 14-24009-CV, 2020 WL 1057280, at *5 (S.D. Fla. Mar. 3, 2020) ("this Court has rejected the argument that individual cases should remain in an MDL proceeding simply because the claims 'have some degree of commonality'"), quoting *Tennessee Med. Ass'n v. United Healthgroup Inc.,* Case No. 00-1334-MD, 2014 WL 12837582, at *5 (S.D. Fla. Jan. 16, 2014).

The examples of overlapping claims in Keurig's brief are helpful in illustrating that there will be judgments by two different judges and possibly four juries on overlapping issues regardless of whether remand occurs now or years from now, after summary judgment is resolved. Keurig

7

points to overlap in the plaintiffs' positions on market definition (ECF No. 1303 at 6), but that issue will almost certainly go to trial; JBR in California, and all other plaintiffs in SDNY. The same is true for the antitrust issues. To the extent Keurig chose to have one economist, Kevin Murphy, opine on antitrust liability, he will separately testify at trial in California against JBR, and in SDNY against each of the other plaintiffs. McLane's and DPP's expert's citations and reliance on JBR's economics expert's report does not change that procedural inevitability (ECF No. 1303 at 6). Likewise, irrespective of the scope of Judge Gajarsa's report and overlap between JBR's and Treehouse's sham litigation experts (*id.* at 9), JBR's sham litigation claim will be tried in California, while Treehouse and McLane's sham litigation claims will be tried in New York. The outcome of plaintiffs' Daubert motion regarding Judge Gajarsa (*id.*) will therefore have no effect because there will inevitably be separate trials in California and New York.

JBR's false advertising claims, unlike other plaintiffs' claims, rely on California unfair competition law in addition to federal false advertising law. In circumstances where a plaintiff's state law claims were unique, courts have remanded based on the premise that the transferor court will be more familiar with the state law issues. *In re Takata*, 2020 WL 1057280, at *4 ("remand is warranted because transferor courts are 'familiar with the state law of their respective jurisdictions' and thus 'are in a better position to assess' state claims."); *In re Insurance Brokerage Antitrust Litigation*, MDL No. 1663, 2009 WL 1874085, at *4 (D.N.J. June 30, 2009) ("[A]djudication of dispositive motions will also require the application of Missouri state statutory and common law. The Court believes that such a detailed review may best be undertaken by the court that sits in that state and more frequently applies the law that controls Plaintiffs' cases ... This factor also weighs heavily in favor of remand."); *In re Activated Carbon-Based Hunting*, 840 F. Supp. 2d at 1199 (suggesting remand for cases raising state law unfair competition and unjust

8

enrichment claims); *In re Light Cigarettes Mktg. Sales Practices Litig.*, 832 F. Supp. 2d 74, 77–78 (D. Me. 2011) (suggesting for remand of cases due to "case-specific questions unique to the state law of the[ ] respective jurisdictions")).

Additionally, if this Court or the Eastern District of California is not inclined to grant summary judgment in each Plaintiffs' favor on false advertising issues, JBR's false advertising claims will be tried in California, and the rest of Plaintiffs' false advertising claims will be tried in New York. That procedural outcome is true irrespective of JBR's expert Barbara Frederiksen's partial reliance on Treehouse expert Dr. Ken Castleman's report (ECF No. 1303 at 8) and irrespective of the fact that Keurig's experts have presented rebuttal reports from Dr. Rossi and Mr. Fedorka that address JBR's experts while also submitting reports that address other plaintiffs' experts' opinions.

### E. Keurig's Own Cited Evidence Shows the Stakes are High in This Matter.

JBR asserted in the 2014 preliminary injunction proceedings that Keurig's conduct would cause great harm to JBR, and that is exactly what happened in the seven years hence. Keurig notes that JBR achieved ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

### F. JBR Has Aggressively Sought to Mitigate the Harm Caused by Delay.

Keurig incorrectly complains that JBR was the cause of four years of discovery in this matter. To the contrary, Keurig and its third-party retail and distribution partners, not JBR, caused the incessant delays during discovery through various failures to timely complete document

9

production. JBR joined various plaintiffs' motions to extend discovery because it, like all the other plaintiffs, was entitled to the discovery, and the delays were not the fault of JBR or any of the other plaintiffs. Moreover, JBR sought to mitigate the harm from Keurig's delays by repeatedly requesting the opportunity to file early motions for summary judgment, and an early opportunity to remand to California, while remaining coordinated with the discovery in the MDL. Keurig cannot revise history now to suggest that JBR created the delays.

### III. CONCLUSION

Continued consolidation of JBR's case does not result in major efficiency gains because of the near certainty that most of the case will go to trial in California. Remand now will avoid unnecessary motion practice and facilitate the California court's handling of the matter. It will also allow JBR to pursue its claims on a schedule that does not include class certification issues and a bevy of motions that are unrelated to JBR's case. The Court should therefore suggest remand to the panel.

Dated: April 28, 2021            Respectfully submitted,

By:    /s/ Daniel Johnson Jr.
Daniel Johnson Jr. (CA Bar No. 57409)
Mario Moore (CA Bar No. 231644)
Robert G. Litts (CA Bar No. 205984)
**DAN JOHNSON LAW GROUP, LLP**
1350 Old Bayshore Highway, Suite 520,
Burlingame, CA 94010
Telephone: 415-604-4500
Email: dan@danjohnsonlawgroup.com
Email: mario@danjohnsonlawgroup.com
Email: robert@danjohnsonlawgroup.com